UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT P.,[1]<br><br>     Petitioner,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security<br>Administration,[2]<br><br>     Respondent. | Case No. 1:21-CV-00225-DKG<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court for consideration is Scott P.'s Petition for Review of the

Respondent's denial of social security benefits, filed on May 25, 2021. (Dkt. 1). The

Court has reviewed the Petition for Review, the parties' memoranda, and the

administrative record ("AR"). For the reasons that follow, the Court will affirm the final

decision of the Commissioner of Social Security ("Commissioner").

## BACKGROUND

On January 8, 2020, Petitioner protectively filed an application for Title II and

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d). Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER – 1**

XVI benefits for a period of disability beginning July 1, 2019, based upon physical and mental impairments including post-traumatic stress disorder, idiopathic intercranial hypertension, depression, and anxiety. A hearing was held on December 15, 2020, before an Administrative Law Judge ("ALJ") Judge Wynne O'Brien-Persons. After considering testimony from Petitioner and a vocational expert, ALJ O'Brien-Person issued a decision on December 24, 2020, finding that Petitioner was not disabled.

Petitioner requested review by the Social Security Appeals Council, which denied his request for review on April 6, 2021, making the ALJ's decision the final decision of the Commissioner. (AR 1-6). Petitioner timely appealed this final decision on May 25, 2021. (Dkt. 1).

The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). At the hearing, the disability onset date was amended to January 1, 2020. Petitioner was forty-three years of age at the time of the alleged disability onset. Petitioner has a high school education and is an Army veteran who has worked primarily in law enforcement. (AR 312). Petitioner also has previous work experience as a security officer, salesperson, and coffee shop attendant. (AR 26, 54).

**MEMORANDUM DECISION AND ORDER – 2**

## THE ALJ'S DECISION[3]

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step two, the ALJ found that Petitioner had the following severe impairments: depression, anxiety, and post-traumatic stress disorder (PTSD). (AR 18). At step three, the ALJ determines whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 416.920(d), 416.925 and 416.926. The ALJ determined that Petitioner did not have an impairment or combination of

---

[3] *Kennedy v. Colvin*, 738 F.3d 1172 (9th Cir. 2013), sets forth the five-step review process as follows:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in 'substantial gainful activity' and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id*. § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's 'residual functional capacity' in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

738 F.3d at 1175.

**MEMORANDUM DECISION AND ORDER – 3**

impairments that met or were medically equal to the criteria of Listings 12.04, 12.06, and 12.15. (AR 20). The ALJ explained that in making this determination, she considered whether "paragraph B" and "paragraph C" criteria were satisfied. (AR 20-21). As to "paragraph B" criteria, the ALJ explained that she considered Petitioner's ability to understand, remember and apply information; to interact with others; to concentrate, persist, and maintain pace; and adapt or manage himself, and found that claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, sufficient to satisfy "paragraph B" criteria. (AR 20-21). As to "paragraph C" criteria, the ALJ explained that Petitioner "has not met the two-year duration along with the necessary history of treatment and marginal adjustment necessary to satisfy these criteria." (AR 21).

At step four, the ALJ determined Petitioner retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations as follows:

> [Petitioner] is limited to simple, routine tasks. He can occasionally interact with the public and co-workers, but the contact must be brief and superficial. He can occasionally interact with supervisors. He can occasionally deal with changes in a routine work setting. He must avoid crowds, small, enclosed places, and loud noises.

(AR 21). In reliance upon testimony from the vocational expert, the ALJ found that Petitioner would not be able to perform any past relevant work. (AR 26). Further, the ALJ proceeded to step five and concluded that Petitioner would be able to perform the requirements of representative medium, unskilled occupations such as laundry worker, cleaner, and polisher/buffer. (AR 27).

**MEMORANDUM DECISION AND ORDER – 4**

## ISSUES FOR REVIEW

The following issues are raised on appeal:

1.    Whether the ALJ reasonably evaluated Petitioner's subjective symptom testimony.

2.    Whether the ALJ reasonably evaluated the medical opinion evidence.

3.    Whether the ALJ properly rejected the lay witness testimony.

4.    Whether the ALJ's Residual Functional Capacity assessment is supported by substantial evidence.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the final decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that does not support the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*,

236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

### 1. Subjective Symptom Testimony

Petitioner challenges the ALJ's evaluation of his subjective symptom testimony, arguing that the ALJ erred by disregarding his statements without providing clear and convincing reasons for doing so. (Dkt. 12 at 5). Respondent contends that the ALJ reasonably evaluated Petitioner's symptom testimony. (Dkt. 13 at 3-4).

MEMORANDUM DECISION AND ORDER – 6

a. **Legal Standard**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. §§ 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that [his or] her impairment could reasonably be expected to cause the severity of the symptom [he or] she has alleged; [he or] she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When evaluating the intensity and persistence of symptoms, the Commissioner requires that the ALJ consider all the evidence in the record. *See* SSR 16-3p (March 16,

MEMORANDUM DECISION AND ORDER – 7

2016), 2016 WL 1119029 at *1-2.[4] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

In addition, the Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

### b.  Analysis

Here, the ALJ considered Petitioner's subjective symptom testimony, including that Petitioner suffers from PTSD that is exacerbated by loud noises, crowds, confined

---

[4] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo*, 871 F.3d at 679 n.5.

**MEMORANDUM DECISION AND ORDER – 8**

spaces, and close proximity to others. (AR 22). The ALJ also considered Petitioner's

testimony that he has "good days" and "bad days"; that he received psychiatric treatment,

including medication therapy, from Highland Springs Clinic; and that he was more

functional on medications such that he could get out of the house, go to the store, or visit

his sister while on medication. (AR 22). The ALJ concluded that while Petitioner's

medically determinable impairments could reasonably be expected to cause the alleged

symptoms, Petitioner's statements concerning the intensity, persistence, and limiting

effects of his symptoms were "not entirely consistent" with the medical evidence and

Petitioner's daily living activities. (AR 22, 24). The Court will discuss each in turn.

### i.    Medical Evidence

An ALJ may not discredit a claimant's symptom testimony and deny benefits

solely because the degree of the symptoms alleged is not supported by objective medical

evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*,

947 F.2d 341, 346-47 (9th Cir. 1991). However, the medical evidence is a relevant factor

in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*,

261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ provided a detailed analysis of each of Petitioner's mental

examinations dating back to November 2019, noting that Petitioner "has a history of

signs and symptoms of depression, anxiety, and post-traumatic stress disorder (PTSD)."

(AR 22-23). After describing Petitioner's medical treatment over the twelve-month

period at issue, (AR 22-23), the ALJ found that Petitioner's mental symptoms have been

"reasonably well controlled on medication," (AR 24). The ALJ determined that his

**MEMORANDUM DECISION AND ORDER – 9**

mental status exams have been "fairly unremarkable, without signs of serious mental pathology," with the exception of one reference to "panic attacks," which Petitioner did not mention at the hearing. (AR 24). The ALJ noted that Petitioner had not required emergency room care or "inpatient hospital stay for acute exacerbations of psychiatric illness," and noted that Petitioner had not been involved in counseling or day treatment programs. (AR 24). The ALJ further considered Petitioner's mental impairments in imposing limitations, stating that even after "[g]iving [Petitioner] every benefit of the doubt," she gave "due consideration to [his] mental impairments by imposing limitations to simple routine tasks involving limited social interaction and only occasional changes in a routine work setting." (AR 24). Ultimately, the ALJ concluded that the evidence did not support limitations beyond those contained in the RFC assessment. (AR 24).

The Court finds that the ALJ provided clear and convincing reasons to reject Petitioner's subjective complaint testimony based upon inconsistencies in the medical evidence. The ALJ cited to substantial evidence in support of her decision to reject Petitioner's testimony on the basis that Petitioner's "mental symptoms have been reasonably well controlled on medication." Petitioner asserts that the treatment records as a whole are consistent with his statements and Lieutenant Troy Teller's ("Lt. Teller") lay witness testimony, specifically as they pertain to Petitioner's ability to interact with the public, co-workers, and supervisors in employment settings. (Dkt. 12 at 7-8). While the ALJ did not specifically address Lt. Teller's testimony or provide a detailed analysis of Petitioner's interactions with medical staff when he disagreed with the treatment and care he received, this is not required. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir.

**MEMORANDUM DECISION AND ORDER – 10**

2020) ("Our decisions do not require ALJs … to draft dissertations when denying benefits."); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("[T]he ALJ's analysis need not be extensive."). Instead, the ALJ indicated that she specifically gave "due consideration to [Petitioner's] mental impairments by imposing limitations to simple, routine tasks involving limited social interaction." (AR 24). Indeed, the ALJ's RFC assessment encompasses Petitioner's concerns exactly: "[Petitioner] can occasionally interact with the public and co-workers, but the contact must be brief and superficial. He can occasionally interact with supervisors." (AR 21). The Court finds this sufficient.

Petitioner also takes issue with the ALJ's indication that Petitioner did not incur any emergency room visits or "inpatient hospitalization for acute exacerbations of psychiatric illness." (Dkt. 12 at 8). As Petitioner correctly notes, this statement alone is "insufficient to find [him] not disabled." *See Odisian v. Colvin*, No. CV 12-9521-SP, 2013 WL 5272996, at *5 (C.D. Cal. Sept. 18, 2013). However, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995)). As evinced from the ALJ's detailed discussion of the objective medical evidence in this case, (AR 22-23), this was not the only basis for the ALJ's determination. Thus, it was not error for the ALJ to consider Petitioner's lack of emergency room visits or inpatient hospitalization in conjunction with the other medical evidence in disregarding Petitioner's symptom testimony.

**MEMORANDUM DECISION AND ORDER – 11**

Finally, Petitioner asserts that the mental status examinations do not constitute substantial evidence that Petitioner is capable of maintaining full-time competitive employment. (Dkt. 12 at 8). However, as Respondent aptly notes, the standard on review is not whether other evidence in the record exists to support a finding of disability, but whether there is substantial evidence to support the ALJ's finding. *Jamerson*, 112 F.3d at 1067 ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the [ALJ's] actual finding that claimant is not disabled.").

In sum, the Court finds that the ALJ provided clear and convincing reasons to discount Petitioner's symptom testimony based upon substantial evidence indicating that Petitioner had improved with treatment. Further, the ALJ specifically incorporated appropriate limitations in the RFC that account for Petitioner's mental impairments and difficulties with social interactions. Accordingly, the ALJ did not err in concluding that Petitioner's subjective testimony was not supported by the medical evidence.

## ii.   Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptom testimony if Petitioner's activities either contradict his testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that Petitioner's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

**MEMORANDUM DECISION AND ORDER – 12**

Additionally, a claimant does not need to be utterly incapacitated to receive disability benefits, and the fact that he is able to complete certain routine activities is insufficient to discount his subjective symptom testimony. *Id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Indeed, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with petitioner's claimed limitations and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). However, "[i]n reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray*, 554 F.3d at 1227 (9th Cir. 2009); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Here, the ALJ recognized that Petitioner "has a history of signs and symptoms of depression, anxiety, and post-traumatic stress disorder," but ultimately found that his "statements about the intensity, persistence, and limiting effects of his … symptoms … are not entirely consistent with [his] activities of daily living." (AR 23-24). The ALJ reviewed in detail Petitioner's daily activities contained in his February 2020 Function

**MEMORANDUM DECISION AND ORDER – 13**

Report, references in the medical record, and Petitioner's testimony at the hearing and specifically contrasted the statements contained in Petitioner's February 2020 Function Report with references in the medical record related to Petitioner's ability to manage his day-to-day living, self-care, chores, and other tasks. (AR 24). The ALJ also traced the numerous activities Petitioner engaged in throughout the relevant time period, which included regular exercise, (AR 24, 410, 654, 596); working as a caterer as a "favor" for his nephew at his nephew's wedding, (AR 24, 54, 618); going to the Nampa Recreation Center, (AR 24, 618); riding his motorcycle, (AR 24, 316, 400); going to the movies regularly, with friends, and alone, (AR 24, 47, 316, 400); spending time with his teenage daughter, (AR 24, 313, 582); making preparations for his daughter to come live with him full-time, (AR 24, 582); and attending CrossFit classes between ten minutes and one hour in length, anywhere from three to five times per week, (AR 24, 43, 596).

Finally, the ALJ considered Petitioner's current living situation in Boise where he shares an apartment with his nephew and nephew's wife; completes his share of the chores to the best of his ability; takes his dog for walks; goes out shopping, albeit "early or late to avoid people"; drives a car; works out three times per week; and enjoys riding his motorcycle. (AR 25). Overall, the ALJ concluded that Petitioner's daily activities "suggest that [Petitioner] was more active and engaged during the period at issue, and was not functionally impaired to the extent alleged." (AR 25).

Petitioner asserts that the ALJ failed to either compare Petitioner's activities to a threshold for transferrable work skills or indicate which activities contradicted Petitioner's other statements. (Dkt. 12 at 9-10). The Court finds Petitioner's argument

**MEMORANDUM DECISION AND ORDER – 14**

unavailing. The ALJ specifically noted that in Petitioner's February 2020 Function Report stated, Petitioner stated that he "does not spend time with others," "[h]owever, he indicated he goes to movie theaters on a regular basis" and "has difficulty being around people for any extended period." (AR 24). Petitioner's November 2019 medical records, however, indicated that Petitioner "had three friends with whom he likes to go motorcycle riding or watch movies." (AR 24). In June 2020, the ALJ noted that Petitioner was a caterer at his nephew's wedding and went to the Nampa recreational center. (AR 24). Finally, the ALJ noted that in July 2020, Petitioner reported that he "does not like to go out in public except to attend CrossFit class," which he "generally attends three days a week," and that he was having a good summer with his fifteen-year-old daughter and was hoping to find a place for both of them to live together full-time. (AR 24). The ALJ's lengthy discussion of Petitioner's activities, several of which included extended social interaction sufficiently substantiates the ALJ's conclusion that Petitioner was "more active and engaged during the period at issue, and was not functionally impaired to the extent alleged." (AR 25).

Petitioner also takes issue with the ALJ's failure to expressly note the "caveat" that Petitioner will "usually go [to CrossFit] early in the morning between about 4:00 and 5:00" because he doesn't sleep a lot and those are the off hours when not many people attend. (Dkt. 12 at 9; AR 43). However, the ALJ was not required to mention each detail of Petitioner's testimony in her ruling. *See Lambert*, 980 F.3d at 1277 ("Our cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."). Instead, the Court finds that

**MEMORANDUM DECISION AND ORDER – 15**

the reasons the ALJ provided are sufficiently clear to permit this Court to conclude that the ALJ "did not arbitrarily discredit [Petitioner's] testimony." *See Oretza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

Ultimately, the Court finds that the ALJ provided clear and convincing reasons to reject Petitioner's subjective complaint testimony supported by substantial and specific evidence of Petitioner's daily activities that undermined Petitioner's complaints, and the ALJ's decision on this issue is entitled to deference. *See Rollins*, 261 F.3d at 857.

## 2.  Evaluation of Medical Opinion

Petitioner asserts that the ALJ improperly rejected the medical opinion of Philip L. Sarff, Ph.D. without specific and legitimate reasons supported by substantial evidence. (Dkt. 12 at 10). Respondent maintains that the ALJ reasonably assessed the medical opinions and past administrative findings based on the revised regulations. (Dkt. 13 at 8, 10).

### a.  Legal Standard

New regulations governing an ALJ's evaluation of medical opinion evidence apply to claims filed on or after March 27, 2017. *See* Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions. *Id.*; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other

**MEMORANDUM DECISION AND ORDER – 16**

factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors in this evaluation process are supportability and consistency.[5] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how supportability and consistency were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how the other secondary factors were considered, unless he or she finds that two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32

---

[5] "Supportability" is defined as: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" is defined as: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

**MEMORANDUM DECISION AND ORDER – 17**

F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

### b. Dr. Sarff's Medical Opinion

In February 2020, Dr. Sarff conducted a mental status examination of Petitioner and completed a PTSD Review Disability Benefits Questionnaire form for ratings purposes through the Department of Veterans Affairs ("VA"). (AR 450). Dr. Sarff noted that Petitioner had occupational and social impairments with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. (AR 451). Dr. Sarff documented Petitioner's recent history, noting Petitioner's "good relationship" with his fifteen-year-old daughter and termination from his most recent position as a police officer due to his inability to interact with public or coworkers and insubordination. (AR 452). Dr. Sarff also took note of several of Petitioner's symptoms, including depressed mood, panic attacks more than once a week, chronic sleep impairment, memory loss, difficulty establishing and maintaining effective work and social relationships, and difficulty adapting to stressful circumstances, including work or a work-like setting. (AR 455). Dr. Sarff noted that Petitioner was particularly "stressed about the C&P process," "concerned about his future," and "prone to being frustrated that morphs to hopelessness." (AR 455). He reported that Petitioner had low self-esteem, an energy level of "4" on a 10-point scale, and panic attacks several days out of the week that could last up to 12 hours. (AR 455). Ultimately, Dr. Sarff concluded that Petitioner had moderate impairments in reliability and productivity, an intermediate moderate impairment in judgment, and moderate to intermittent severe impairments in concentration, ability to

interact with supervisors and coworkers, and mood. (AR 456).

### c. The ALJ's Decision

In her decision, the ALJ acknowledged that while she could not defer or give any specific evidentiary weight to medical opinions or prior administrative medical findings, she fully considered each of the medical opinions. (AR 25). As to the opinion of examining, non-treating physician Dr. Sarff, however, the ALJ found his opinion unpersuasive. (AR 25). In rejecting Dr. Sarff's opinion, the ALJ focused on the factors of supportability and consistency. Concerning the factor of supportability, the ALJ found that Dr. Sarff's opinions were not supported by his own mental status exam, which revealed that Petitioners' mental status was mostly intact. (AR 25). As to consistency, the ALJ found that Dr. Sarff's opinion was "inconsistent with the relatively benign mental status findings when [Petitioner was] on appropriate medication therapy over a twelve-month period since [January 2020]," and that it was inconsistent with Petitioner's daily living activities, which included meal preparation, some household chores, driving, shopping, reading, riding a motorcycle, attending movies, and routinely working out at the gym. (AR 25).

### d. Analysis

The Court finds that the ALJ provided legally sufficient reasons supported by substantial evidence in rejecting Dr. Sarff's medical opinion and that the ALJ properly considered the factors of supportability and consistency. On the issue of supportability, the ALJ determined that Dr. Sarff's opinions were "not supported by his own mental status exam, which revealed mostly intact mental status," (AR 25). Petitioner asserts that

**MEMORANDUM DECISION AND ORDER – 19**

the ALJ improperly focused on non-pertinent mental status issues such as orientation, thought process, speech, and insight, (*see* AR 23), rather than the portions of the MSE pertinent to the severity of Petitioner's mental impairment symptoms, such as affect and mood, in finding Dr. Sarff's opinion unsupported, (Dkt. 12 at 13). Petitioner's argument has little merit, however, as the portions of Dr. Sarff's opinion to which Petitioner cites do not indicate that his mental status at the time of Dr. Sarff's examination was not "mostly intact." Specifically, the "Behavioral Observations" contained in Dr. Sarff's report indicated that Petitioner interacted in a "logical, coherent, and reserved fashion" when examined and that his insight was "average." (AR 455). Moreover, as Respondent correctly notes, the remainder of Dr. Sarff's observations consisted of Petitioner's subjective statements about his own mood, including external stressors, frustration, energy, and self-esteem, and concentration. *See Ghanim*, 763 F.3d at 1162 (9th Cir. 2014) ("If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2008))). Therefore, it was not unreasonable for the ALJ to reject Dr. Sarff's medical opinion on the basis that the mental status exam did not clearly reveal "intermittent severe impairment" in the areas of concentration, ability to interact with co-workers and supervisors, and mood.

On the issue of consistency, the ALJ found that Dr. Sarff's opinion was "inconsistent with the relatively benign mental status findings when [Petitioner was] on appropriate medication over a 12-month period since [January 2020]," (AR 25).

**MEMORANDUM DECISION AND ORDER – 20**

Petitioner asserts that the ALJ improperly rejected Dr. Sarff's opinion as inconsistent by assuming that the mental status evaluations ("MSEs") in the record are entitled to controlling weight when they conflict with the ultimate diagnostic picture in a medical opinion. (Dkt. 12 at 15). However, there is no indication in the ALJ's opinion that she gave undue weight to the MSEs in the record, as on multiple occasions, the ALJ cited to substantial portions of the medical record that contain more information about Petitioner's assessments than that contained in the MSEs. (AR 25). Nor is there any indication that that the MSEs conflicted with the ultimate diagnostic picture in the medical opinions upon which the ALJ specifically relied.

In addition, the ALJ also properly considered other factors. First, the ALJ properly considered Dr. Sarff's lack of treating relationship with Petitioner. The ALJ considered the fact that "Dr. Sarff completed a form for ratings purposes, and does not have a treating relationship with [Petitioner.]." (AR 25). The ALJ similarly commented that the state agency medical consultants, Drs. Kachgal and Greenspan, were "non treating, non-examining medical sources. (AR 25). While Petitioner correctly asserts that the ALJ was not required to address the relationship factors, (Dkt. 12 at 15), the revised regulations do not preclude the ALJ from discussing facts other than supportability and consistency. Under the new regulations, the ALJ "may, but [is] not required to, explain how [she] considered the [relationship] factors … when [she] articulate[s] how [she] consider[ed] medical opinions … in [the] case record." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As such, the Court concludes that the ALJ did not err by commenting on the medical sources' relationships with Petitioner.

**MEMORANDUM DECISION AND ORDER – 21**

Second, the medical records Petitioner cites to contradict the ALJ's reasoning do not render the ALJ's findings unreasonable or unsupported by substantial evidence. Petitioner traces the medical notes taken between January 14, 2020, and August 14, 2020, and indicates that his poor mood and affect at many of those appointments were consistent with his depression and Dr. Sarff's medical opinion that he suffered intermittent severe impairments in mood, concentration, an ability to interact with coworkers and supervisors. (Dkt. 12 at 13-15).

The ALJ cited to the following evidence to support her findings:

- On December 30, 2019, Petitioner met with Dr. Hobson, who assessed Petitioner's judgment as "good," "[m]ood was stated as 'okay' and affect was euthymic." (AR 402).

- On February 11, 2020, Petitioner indicated that his "mood and energy are each improved about 50%" while on generic Adderall, though he "still [didn't] want to be around people." (AR 515). Petitioner noted that when he "[f]orgot the venlafaxine for 3-4 days [he] experienced a large crash," and indicated, "My mood went way down." (AR 515). After being on medications for "a couple days," however, he was "starting to feel better." (AR 515). Dr. Erickson's assessment was that Petitioner had "[p]ersistent depressive disorder with modest improvement in symptoms," and noted that Petitioner "continues to benefit from psychiatric medications as documented." (AR 515). Dr. Erickson further noted that Petitioner's mood was "fair," that his affect was "appropriate to mood," that his thought process was "organized currently," and that his insight and judgment both "appear[ed] intact." (AR 517).

- On March 9, 2020, Petitioner reported he was "up all night … having nightmares and only got 2-3 hours of restless sleep." (AR 511). Petitioner reported that he felt "that if [the Veteran Affairs Compensation and Pension Examination process] was resolved he would be doing relatively well actually," and stated that the "venlafaxine and the stimulant medication seemed to be doing well." (AR 512). Dr. Erickson noted that Petitioner had "[p]ersistent depressive disorder and insomnia" and "continues to benefit from psychiatric medications as documented." (AR 513-14). He noted Petitioner's "current mood [was] fair," that his "thoughts are organized," and that his insight and judgment were both "fair." (AR 513).

- On April 22, 2020, Petitioner reported that although he had had "some ups and downs with the virus thing," he was "doing relatively well" and had "decided to move back to Idaho." (AR 508). He had "[n]o concerns or complaints" and was "encouraged because he did get 80% service connection and IU so finances are feeling better." (AR 508). Dr. Erickson's assessment was that Petitioner had "[p]ersistent depressive disorder, currently improved," and he noted that Petitioner "continues to benefit from psychiatric medications as documented." (AR 509). Dr. Erickson noted that Petitioner's mood was "even," his "thoughts are organized currently," that he had "fairly good insight currently," and that his judgment was "currently intact." (AR 509).

- On July 16, 2020, Petitioner met with Alissa D. Lyon, LCSW, because he was "doing really bad today." (AR 598). He reported that he had been "feeling 'absolutely hopeless' and has been experiencing crying spells," and that he "doesn't like to go out in public, except to attend his CrossFit class," which he "generally attends 3 days a week." (AR 596). He also reported that he "forced himself to go [to CrossFit] this morning to see if the exercise would alleviate symptoms and release endorphins." (AR 596). Dr. Lyon assessed his mood and affect as "affect is congruent with mood, mood depressed," his insight and judgment as "good," and his thought processes as "normal, coherent, linear, logical, goal-directed." (AR 597).

- On July 20, 2020, Petitioner reported "worsening mood since last encounter" with Dr. Velez but indicated "he is feeling better today." (AR 591). He reported that "his mood has been 'dipping down' prior to starting Wellbutrin," which he took but discontinued due to intolerance. (AR 591). Petitioner stated that he "[f]eels these medications remain helpful in spite of breakthrough [symptoms] of hopelessness and low motivation." (AR 591). Dr. Velez assessed his mood and affect as "mildly dysphoric/unable to assess," his attention and concentration as "good/good per telephone," and his insight and judgment as "good/good." (AR 592).

- On July 22, 2020, Petitioner acknowledged that his poor sleep and longstanding issues with insomnia were contributing to his mood and anxiety symptoms. (AR 538). During the appointment, Dr. Kelly noted that Petitioner "endorse[d] symptoms concerning for post traumatic stress disorder … and note[d] intermittent difficulty with low mood, low energy, low motivation, anxious ruminations." (AR 538). Dr. Kelly noted that his mood and affect were "'not great,' mood congruent, limited range overall." (AR 540).

- On July 30, 2020, Petitioner "noted doing 'okay' today but noted he had recently had some 'bad' days where he didn't want to talk to anyone or do anything; he stated it felt as if 'everything was wrong' and reached out to ICT which was

**MEMORANDUM DECISION AND ORDER – 23**

helpful." (AR 582). He indicated that he appreciated being recognized as "unemployable," that he was no longer homeless, and that he was "now looking for ways to occupy his time." (AR 582). He noted that he was "having a good summer with his 15 yr old daughter … and is hoping to find a place for both of them as he is hopeful she'll come live with him full-time." (AR 582). The reporting physician noted that Petitioner was "alert and attentive," "cooperative and reasonable," while his speech was "slow" and his "affect is congruent with mood, mood depressed." (AR 582-83).

While the medical records indicate that Petitioner's mood certainly fluctuated over the course of his medication therapy in 2020, there is substantial evidence to indicate that Petitioner's mental status results were not overtly severe, but "relatively benign." Indeed, despite Petitioner's inability to obtain a new prescription for Adderall and a handful of instances where he noted a worsening mood, (AR 591), bad days, (AR 582), and feelings of hopelessness, (AR 596), there is substantial evidence to suggest that Petitioner was experiencing modest symptom management, especially as it pertained to his ability to concentrate, while on appropriate medication. Such evidence is consistent with the medical opinions of State Agency medical consultants, Drs. Kachgal and Greenspan, who found "moderate" or "not significant[]" limitations in each of these areas. (AR 66-68, 77-79, 92-93,105-06).

True, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working," *Garrison*, 759 F.3d at 1017; however, there is no indication that the ALJ did that here. Rather, the ALJ "fully considered the medical opinions and prior administrative medical findings" in making her determination, (AR 25). This is precisely what the Ninth Circuit requires. *See id.* at 1018 ("Rather than describe [the claimant's]

**MEMORANDUM DECISION AND ORDER – 24**

symptoms, course of treatment, and bouts of remission, and thereby chart a course of improvement, the ALJ improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [the claimant]." While Petitioner may wish for a different result, the ALJ's conclusion that Dr. Sarff's opinion was inconsistent with the "relatively benign mental status findings" contained in Petitioner's medical records while he was on medication therapy is neither unreasonable nor unsupported. *See Tommasetti*, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

Finally, the ALJ properly discredited Dr. Sarff's opinion on the basis that it was inconsistent with Petitioner's activities of daily living. The ALJ specifically noted Petitioner's activities such as meal preparation, some household chores, driving, shopping, reading, riding a motorcycle, attending movies, and routinely working out at the gym. (AR 25). Petitioner asserts that the ALJ's decision is flawed because the activities in which Petitioner engaged relate to exertional skills that are "irrelevant and not responsive to the non-exertional limitations contained in Dr. Sarff's opinion." (Dkt. 12 at 15).

However, the Court finds that the ALJ thoroughly supported her conclusion that Dr. Sarff's opinion was not consistent with Petitioner's activities of daily living by citing to numerous portions of the record, each of which support a finding that Petitioner's limitations with respect to non-exertional skills such as concentration, interaction with others, and mood, were not "intermittently severe," as indicated in Dr. Sarff's opinion,

**MEMORANDUM DECISION AND ORDER – 25**

(AR 25), but "moderate," as noted in Drs. Kachgal and Greenspan's opinions, (AR 66-68, 77-79, 92-93,105-06); (AR 410) (noting Petitioner's short-term goal of going to the gym five days a week, "forcing himself to go today" and "feeling good about getting up daily, taking a shower, and getting out of the house"); (AR 582) (Petitioner was "having a good summer with his 15 yr old daughter who went back home yesterday," that he "is hoping to find a place for both of them" and is "hopeful she'll come live with him full-time"); (AR 596) (Petitioner "doesn't like to go out in public, except to attend his CrossFit class. He … forced himself to go this morning to see if the exercise would alleviate symptoms and release endorphins. He generally attends 3 days a week."); (AR 618) (Petitioner was "a caterer at a wedding yesterday and then went to the Nampa recreational center").

The ALJ also considered Petitioner's statements contained in the February 2020 Function Report, (AR 311-319), and Petitioner's hearing testimony about his daily living activities, (AR 41-43, 47, 51), each of which pertained to Petitioner's ability to prepare meals, tend to household chores, drive, shop, read, ride a motorcycle, and attend movies, (AR 25). Overall, the Court finds that there is substantial evidence to support the ALJ's conclusion that Petitioner's daily activities are in tension with Dr. Sarff's opinion. Accordingly, the Court will affirm the ALJ's decision finding Dr. Sarff's opinion unpersuasive.

## 3.  Lay Witness Testimony

Petitioner asserts that the ALJ erred by dismissing the testimony of four lay witnesses who provided favorable testimony corroborating Petitioner's mental impairment symptom testimony without providing germane reasons for doing so. (Dkt.

**MEMORANDUM DECISION AND ORDER – 26**

12 at 16.) Respondent asserts that Petitioner ignores how the new regulations apply to nonmedical testimony and alleges that any error was harmless. (Dkt. 13 at 4).

Petitioner's parents submitted a joint letter explaining their son's history and mental impairment. They testified that Petitioner "is prone to anxiety/panic attacks . . . avoids crowds, social situations, isolates himself from others . . . [and] is always hypervigilant." (AR 362). In addition, they confirmed that Petitioner's severe mental impairments have negatively impacted both his public and personal life. *Id.* Among other things, they noted that Petitioner has had "seven jobs in a period of ten years"; "his marriage ended in divorce"; he "filed for bankruptcy"; and he "is easily angered." (*Id.*)

Petitioner's friend, who was stationed at Ft. Leavenworth, Kansas, between 1995 and 1998 during Petitioner's service in the military, submitted a letter explaining his observations of Petitioner, both during their service together and after. He described some of the traumatic events that he and Petitioner endured while stationed at Ft. Leavenworth and testified that Petitioner has "tried to cope but is still haunted from his time at Fort Leavenworth" and has "struggled for many years with depression." (AR 364).

Petitioner's ex-wife also submitted a letter explaining Petitioner's behavior and mental state during their marriage. Specifically, she testified that Petitioner's symptoms such as paranoia, anger, irritability, and hypervigilance "caused the most harm at work" and that Petitioner consistently had "difficulty with work relationships, peers or supervisors" that led to the termination of his employment on multiple occasions. (AR 366).

Finally, Lieutenant Troy Teller, Petitioner's former supervisor at the Splendora

**MEMORANDUM DECISION AND ORDER – 27**

Police Department, submitted a letter describing how Petitioner's strained interactions

with supervisors and coworkers have affected his ability to maintain stable employment.

(AR 367). Specifically, Lt. Teller testified that Petitioner's "career at Splendora PD was a

roller-coaster" with "little good days and several bad days." *Id.* Moreover, Lt. Teller

indicated that Petitioner had a "hard time dealing with people" and noted that "[c]ertain

situations seemed to trigger a memory and [Petitioner] would be short fused and display

some aggressive behavior towards civilians and officers." *Id.*

### a. Legal Standard

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ

must take into account, unless he or she expressly determines to disregard such testimony

and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d

634, 640 (9th Cir. 2017) (quoting *Lewis*, 236 F.3d at 511). The revised regulations

adjusted the requirements for an ALJ's consideration of nonmedical evidence such as lay

witness statements. Under the plain language of the regulations, the ALJ must consider

lay witness statements: "In evaluating the intensity and persistence" of symptoms, the

ALJ "consider[s] all of the available evidence," including that from "medical sources and

nonmedical sources about how [a claimant's] symptoms affect [him]." 20 C.F.R.

§§ 404.1529(c)(1), 416.929(c)(1); *see also* SSR 16-3p (requiring ALJs to consider other

evidence such as other non-medical sources to evaluate symptoms). However, 20 C.F.R.

§§ 404.1520c(d), 416.920c(d), specifies that the ALJ is not required to articulate how he

or she considered evidence from nonmedical sources "using the requirements in

subparagraphs (a) – (c)," applicable to evaluations of medical opinions.

**MEMORANDUM DECISION AND ORDER – 28**

Rather, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919. When rejecting third party statements that are similar in nature to Petitioner's statements, the ALJ may cite the same reasons used by the ALJ in rejecting Petitioner's statement. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

### b.  Analysis

Here, the ALJ altogether failed to address lay witness testimony and did not provide germane reasons for discrediting any of the four lay witness statements. While Respondent correctly notes that the "ALJ is 'not required to articulate how [she] considered evidence from nonmedical sources' under the same provisions" required for medical opinions and prior administrative medical findings, (Dkt. 13 at 14), the fact remains that the ALJ still "must give reasons" for discounting the testimony of lay witnesses that are germane to each witness, *Dodrill*, 12 F.3d at 919. Because the ALJ stated only that she considered the "other evidence" without expressly discounting the testimony of each witness, the Court cannot affirm the ALJ on grounds she did not articulate. *Orn*, 495 F.3d at 630. For these reasons, the Court finds the ALJ erred in her consideration of the lay witnesses' statements.

### c.  Harmless Error

An error is harmless, however, if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. Respondent asserts that any error

**MEMORANDUM DECISION AND ORDER – 29**

was harmless because the lay witness statements mirror Petitioner's own claims, and the ALJ's reasons for discounting Petitioner's subjective testimony provide the basis for the ALJ's decision to discount these statements. (Dkt. 13 at 14-15). Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, the Court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

Each of the lay witnesses' statements describe different aspects of Petitioner's mental impairments and their impact on both his employment and personal life. As such, they appear to be either consistent with Petitioner's own symptom testimony, which, as discussed at length above, was appropriately disregarded by the ALJ, or consistent with the ALJ's RFC assessment and ultimate finding of nondisability.

Specifically, the testimony of Petitioner's parents, which alleged that Petitioner suffered from panic attacks, was consistent with Petitioner's testimony and appropriately rejected by the ALJ. (AR 24) ("One reference to 'panic attacks' is not supported by signs and symptoms of debilitating anxiety over a 12-month period."); *(id.)* ("At the hearing, [Petitioner] did not mention panic attacks."). Petitioner's parents' testimony that Petitioner avoided crowds and social situations and isolated himself from others was also properly disregarded by the ALJ as inconsistent with the medical record and Petitioner's activities of daily living where Petitioner attended CrossFit classes regularly, shopped, worked as a caterer at a wedding, went to the Nampa recreational center, and went to the movie theater. (AR 24-25). Furthermore, the testimony of Petitioner's friend, ex-wife,

**MEMORANDUM DECISION AND ORDER – 30**

and former employer pertaining to Petitioner's difficulty with peers and supervisors is

appropriately accounted for and incorporated into the ALJ's RFC assessment, as the ALJ

concluded that Petitioner should be "limited to simple, routine tasks"; occasional,

superficial, and brief interaction with the public, co-workers, and supervisors; and

complete avoidance of "crowds, small enclosed spaces, and loud noises." (AR 21).

Because these lay witnesses' statements either corroborate Petitioner's own

symptom testimony or are consistent with the ALJ's RFC assessment, the Court finds that

the ALJ could not possibly have arrived at a different assessment of Petitioner's symptom

testimony and disability determination had she appropriately credited each witnesses'

testimony. *Molina*, 674 F.3d at 1122 ("Because the ALJ had validly rejected all the

limitations described by the lay witnesses in discussing [the petitioner's] testimony, we

are confident that the ALJ's failure to give specific witness-by-witness reasons for

rejecting the lay testimony did not alter the ultimate nondisability determination."); *see

also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the

record the error was inconsequential to the ultimate non-disability determination");

*Halbert T. v. Kijakazi*, No. 3:21-cv-500-SI, 2022 WL 1538655, at *7 (D. Or. May 16,

2022) (finding harmless error where the ALJ "incorporated Plaintiff's interpersonal

limitations into his RFC"). Accordingly, the ALJ's error in failing to address the lay

witness testimony was harmless.

## 4. Residual Functional Capacity Assessment

The ALJ determined that Petitioner had the RFC to perform a full range of work at

all exertional levels subject to the following nonexertional limitations:

**MEMORANDUM DECISION AND ORDER – 31**

Petitioner is limited to simple, routine tasks; brief, superficial, and occasional interaction with the public and co-workers; occasional interaction with supervisors; occasional changes in a routine work setting; and he must avoid crowds, small enclosed places, and loud noises.

(AR 21). Petitioner argues that the RFC assessment is not supported by substantial evidence because it fails to include all of Petitioner's functional limitations. (Dkt. 12 at 19). Respondent contends that the ALJ reasonably assessed Petitioner's RFC. (Dkt. 13 at 3).

### a.  Legal Standard

A claimant's residual functional capacity ("RFC") is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. Essentially, it is the most the claimant can do despite his or her limitations. *Id.* In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *See* SSR 96–8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe. SSR 96–8p. The RFC assessment is used to determine first, whether the claimant can do their past relevant work and, second, whether the claimant can adjust to any other work that exists in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

### b.  Analysis

Here, Petitioner asserts that because the ALJ disregarded Dr. Sarff's medical

**MEMORANDUM DECISION AND ORDER – 32**

testimony as well as the lay witness testimony, the RFC assessment is flawed. (Dkt. 12 at 19). As discussed at length above, the ALJ properly disregarded Dr. Sarff's medical testimony as unpersuasive because it was not supported and was inconsistent with the medical opinions of Drs. Kachgal and Greenspan. Additionally, although the ALJ committed error in failing to discuss the testimony of four lay witnesses, it was harmless error because each witness's testimony either corroborated Petitioner's own symptom testimony, which was properly disregarded by the ALJ, or was consistent with and incorporated into the ALJ's RFC assessment. Because the Court finds that the ALJ's decision was without error, the RFC assessment is not flawed. Accordingly, the ALJ's decision will stand.

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)    The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED**.

2)    The Petition for Review (Dkt. 1) is **DISMISSED.**

DATED: June 7, 2022

Honorable Debora K. Grasham
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER – 33**